UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER K.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

CASE NO. C19-5222 BHS

ORDER REVERSING AND REMANDING DENIAL OF BENEFITS

## I.     BASIC DATA

Type of Benefits Sought:

    (X) Disability Insurance

    ( ) Supplemental Security Income

Plaintiff's:

    Sex: Male

    Age: 57 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff: Lumbar spinal stenosis, degenerative disc disease, osteoarthritis, carpal tunnel syndrome, bone spurs, cervical problems, ruptured and bulging discs, bilateral low back pain with sciatica, moderate to severe impingement of L6 and sacral nerve roots. Admin. Record ("AR") (Dkt. # 7) at 103.

Disability Allegedly Began: July 10, 2015

Principal Previous Work Experience: Patrol guard

Education Level Achieved by Plaintiff: GED

ORDER - 1

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ"):

Date of Hearing: November 28, 2017

Date of Decision: March 22, 2018

Appears in Record at: AR at 22–32

Summary of Decision:

The claimant has not engaged in substantial gainful activity since July 10, 2015, the alleged onset date. *See* 20 C.F.R. §§ 404.1571–76.

The claimant has the following severe impairments: Obesity, sciatica, degenerative disc disease, spinal stenosis, scoliosis, spondylosis, arthropathy, radiculopathy, status post spinal surgeries, arthritis, carpal tunnel syndrome, and ulnar neuropathy. *See* 20 C.F.R. § 404.1520(c).

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with exceptions. He can occasionally crawl, and climb ladders, ropes, or scaffolds. He can frequently stoop, crouch, and climb ramps and stairs. He can occasionally reach overhead. He can frequently handle and finger. He cannot have concentrated exposure to extreme cold, vibrations, or hazards.

The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's RFC. *See* 20 C.F.R. § 404.1565. Alternatively, the claimant is capable of other work that exists in significant numbers in the national economy.

The claimant has not been under a disability, as defined in the Social Security Act, from July 10, 2015, through the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.1520(f).

Before Appeals Council:

    Date of Decision: February 21, 2019

    Appears in Record at: AR at 1–4

    Summary of Decision: Denied review.

### III.    PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

Plaintiff bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI. ISSUES ON APPEAL

A. Whether the ALJ properly evaluated Plaintiff's symptom testimony.

B. Whether the ALJ properly evaluated the opinions of treating physician Margo Newell-Eggert, M.D.

C. Whether the ALJ properly evaluated Plaintiff's wife's testimony.

D. Whether the ALJ properly assessed Plaintiff's RFC.

E. Whether, if the ALJ harmfully erred, this matter should be remanded for an

award of benefits.

## VII. DISCUSSION

### A. The ALJ Partially Erred in Discounting Plaintiff's Testimony

Plaintiff contends that the ALJ harmfully erred in discounting Plaintiff's symptom testimony. Pl. Op. Br. (Dkt. # 9) at 7–10. Plaintiff testified to problems with his low back, neck, and hands. *See* AR at 64–87, 223–30, 253–60. Plaintiff testified that he had difficulty standing for more than five to ten minutes at a time because his legs would hurt and go numb. *Id.* at 80, 228. Plaintiff testified that he had trouble looking up or turning his head due to neck pain. *Id.* at 81. Plaintiff testified that he had trouble using his hands because they would swell up to the point where he couldn't fold his fingers or they would go numb. *Id.* at 81, 228.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged. AR at 25.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ discounted Plaintiff's symptom testimony, stating that "the weight that can be given to the claimant's symptom reports is undermined for the reasons discussed throughout this decision." AR at 25. The ALJ reasoned that Plaintiff's testimony was (1) undermined by the fact that he left his last job for reasons unrelated to his alleged disability, (2) inconsistent with the overall medical evidence, and (3) contradicted by Plaintiff's activities of daily living. *Id.* at 25–29.

1. <u>Plaintiff Left His Job for Reasons Unrelated to His Alleged Disability</u>

The ALJ first rejected Plaintiff's symptom testimony because Plaintiff left his job as a security guard for reasons unrelated to his alleged disability. *See id.* at 25–26. Plaintiff's employer installed a new security system, which required Plaintiff to use a computer. *See id.* at 69–70, 308–11. Plaintiff was unable or unwilling to learn how to use the computer, and quit his job. *See id.* The ALJ reasonably concluded from this that Plaintiff was still capable of working, but quit because he could not or did not want to

learn how to use a computer. This was a valid—but weak—reason to discount Plaintiff's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

       2.      <u>Plaintiff's Testimony Was Not Inconsistent with the Medical Evidence</u>

The ALJ rejected Plaintiff's testimony regarding low back pain, leg pain, and hand issues because she found it inconsistent with the overall medical evidence. *See* AR at 27–29. The ALJ did not discuss inconsistency with the medical evidence as a reason to reject Plaintiff's complaints of neck pain. *See id.* An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the Plaintiff's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Furthermore, the ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016).

With respect to Plaintiff's low back and leg pain, the ALJ noted that Plaintiff had good range of motion in his hips and spine. *See* AR at 27, 327. But Plaintiff had pain and numbness at the same time. *See id.* at 327, 409. The ALJ noted that Plaintiff reported resolution of his sciatica after his back surgery. *See id.* at 28–29, 501, 574. But the record indicates Plaintiff's sciatica returned, and he still had low back pain and numbness in his legs. *See id.* at 501, 574, 670, 694, 698, 719. The ALJ unreasonably

interpreted the medical evidence in finding that it contradicted Plaintiff's testimony regarding his low back and leg pain.

With respect to Plaintiff's hand issues, the ALJ noted that physical exams were consistent with carpal tunnel syndrome, yet Plaintiff declined surgery and did not wear wrist splints at night as directed. *Id.* at 28, 354, 501. Plaintiff did not decline surgery; he stated that he was not interested in a possible carpal tunnel release at the time, but would discuss surgical options if conservative therapies were not providing enough relief. *See id.* at 501. Furthermore, the statement that the ALJ referenced to conclude that Plaintiff did not wear his wrist splints does not support that finding. The statement in the record is in the instructions portion of the treatment notes, and is unintelligible. Wrist splints are listed under current medications, with the following instructions: "1 each by Does not apply route nightly as needed. Right and Left Wrist gauntlet splint for CTS- wear at night and during the day as tolerated." *Id.* at 354 (errors in original). The ALJ could not reasonably draw any conclusions from this collection of words. The ALJ did not accurately portray the record, and thus erred in rejecting Plaintiff's wrist and hand symptom testimony as inconsistent with the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record").

    3.    <u>Plaintiff's Testimony Was Partially Contradicted by his Daily Activities</u>

The ALJ further rejected Plaintiff's symptom testimony because she found it to be contradicted by Plaintiff's daily activities. AR at 27. An ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See*

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). The ALJ reasonably interpreted the evidence in rejecting Plaintiff's testimony regarding difficulty using his hands. The evidence showed that Plaintiff built model trains, planes, and cars, played the bass, and drew plans for bikes. *See* AR at 27, 79, 347. These activities involve fine motor skills that are inconsistent with Plaintiff's claims that his hands would go numb or swell to the point that he could not close them.

The ALJ did not reasonably interpret the evidence, however, in rejecting Plaintiff's testimony regarding his low back, leg, and neck pain based on his daily activities. With respect to Plaintiff's low back and leg pain, the ALJ noted that Plaintiff cared for seven or eight chickens, two ducks, and a dog, did household chores including cooking, doing the laundry, and cleaning the dishes. *See id.* at 27, 67–68, 78. But none of these activities contradict Plaintiff's claims that he had difficulty standing or walking for long periods of time. *See id.* at 80, 228. Plaintiff did not need to "'vegetate in a dark room'" to be eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).

With respect to Plaintiff's neck pain, the ALJ took an unreasonable position. The ALJ asked Plaintiff how long he thought he could look down before feeling neck pain. AR at 85. Plaintiff testified, "I never tried it, I suppose like 10 minutes, 15 minutes before I'd be pushing." *Id.* The ALJ reasoned that this "indicate[d] an endorsement of symptoms without a basis in experience, undermining the weight that can be given to [Plaintiff's] reports." *Id.* at 27. The fact that someone has not timed how long they can look down does not mean they have no basis for estimating how long they can do it. The ALJ erred in rejecting Plaintiff's neck pain testimony on this basis.

4. The ALJ Harmfully Erred in Evaluating Plaintiff's Symptom Testimony

The ALJ harmfully erred in rejecting some of Plaintiff's testimony, but not all of it. The ALJ rejected Plaintiff's testimony regarding low back and leg pain based on one weak reason—that Plaintiff left his job for non-disability-related reasons—and two erroneous reasons—that the testimony was inconsistent with the medical evidence and Plaintiff's daily activities. *Id.* at 25–29. The ALJ rejected Plaintiff's testimony regarding neck pain based on one weak reason—that Plaintiff left work for non-disability-related reasons—and one erroneous reason—that the testimony was inconsistent with Plaintiff's daily activities. *Id.* at 26–27. "[O]ne weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1112). The Court cannot confidently conclude that a reasonable ALJ would have reached the same nondisability determination despite the ALJ's errors, and thus the ALJ harmfully erred in rejecting Plaintiff's testimony

regarding his low back, leg, and neck pain. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

The ALJ did not harmfully err, however, in rejecting Plaintiff's testimony regarding his hand pain. "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). The ALJ convincingly explained that Plaintiff's daily activities contradicted his testimony regarding symptoms in his hands. *See* AR at 27. The ALJ's inclusion of erroneous reasons does not undermine this determination, and those errors were therefore harmless.

**B.     The ALJ Partially Erred in Rejecting Dr. Newell-Eggert's Opinions**

Plaintiff contends that the ALJ harmfully erred in rejecting Dr. Newell-Eggert's opinions. Pl. Op. Br. at 2–6. To reject the contradicted opinions of a treating doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725 (citing *Magallanes*, 881 F.2d at 751). The Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

Dr. Newell-Eggert has been Plaintiff's treating physician since October 2015. *See* AR at 152. Dr. Newell-Eggert submitted a letter describing her diagnoses and treatment

of Plaintiff. *See id.* Dr. Newell-Eggert opined that Plaintiff could not work "even in a light sedentary capacity." *Id.* She opined that Plaintiff "needs to alternate positions frequently, including lying down." *Id.* Dr. Newell-Eggert opined that Plaintiff "is not able to lift and carry weights," could not frequently use his hands for tasks requiring fine motor skills, and could not frequently bend, stoop, stand, or walk. *Id.*

The ALJ gave Dr. Newell-Eggert's opinions minimal weight. *Id.* at 29. The ALJ reasoned that Dr. Alley's opinions were entitled to more weight than Dr. Newell-Eggert's because Dr. Alley had the benefit of more of the longitudinal record. *Id.* The ALJ further reasoned that Dr. Newell-Eggert's opinion that Plaintiff needed to lie down was "inconsistent with and lacking support from any treatment records reflecting a need to change positions or lie down through the day." *Id.* The ALJ last reasoned that Dr. Newell-Eggert's opinion that Plaintiff could not work in any capacity was a "vocational opinion, not a medical one, and [was] beyond [Dr. Newell-Eggert's] expertise as a physician." *Id.* at 30.

The ALJ erred in rejecting Dr. Newell-Eggert's opinions in favor of Dr. Alley's opinions for two reasons. First, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). Dr. Alley did not examine Plaintiff, and thus the ALJ could not simply choose his opinions over those of Dr. Newell-Eggert. Second, the ALJ's determination that Dr. Alley had the benefit of more of the longitudinal record than Dr. Newell-Eggert is not supported by substantial evidence. Dr. Newell-Eggert issued her

of Plaintiff. *See id.* Dr. Newell-Eggert opined that Plaintiff could not work "even in a light sedentary capacity." *Id.* She opined that Plaintiff "needs to alternate positions frequently, including lying down." *Id.* Dr. Newell-Eggert opined that Plaintiff "is not able to lift and carry weights," could not frequently use his hands for tasks requiring fine motor skills, and could not frequently bend, stoop, stand, or walk. *Id.*

The ALJ gave Dr. Newell-Eggert's opinions minimal weight. *Id.* at 29. The ALJ reasoned that Dr. Alley's opinions were entitled to more weight than Dr. Newell-Eggert's because Dr. Alley had the benefit of more of the longitudinal record. *Id.* The ALJ further reasoned that Dr. Newell-Eggert's opinion that Plaintiff needed to lie down was "inconsistent with and lacking support from any treatment records reflecting a need to change positions or lie down through the day." *Id.* The ALJ last reasoned that Dr. Newell-Eggert's opinion that Plaintiff could not work in any capacity was a "vocational opinion, not a medical one, and [was] beyond [Dr. Newell-Eggert's] expertise as a physician." *Id.* at 30.

The ALJ erred in rejecting Dr. Newell-Eggert's opinions in favor of Dr. Alley's opinions for two reasons. First, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). Dr. Alley did not examine Plaintiff, and thus the ALJ could not simply choose his opinions over those of Dr. Newell-Eggert. Second, the ALJ's determination that Dr. Alley had the benefit of more of the longitudinal record than Dr. Newell-Eggert is not supported by substantial evidence. Dr. Newell-Eggert issued her

opinion statement several months after Dr. Alley issued his. *Compare* AR at 117–20 (Dr. Alley's opinion statement, dated May 11, 2016), *with id.* at 152 (Dr. Newell-Eggert's opinion statement, dated September 22, 2016). The evidence does not show that Dr. Alley considered more of the record than Dr. Newell-Eggert. Moreover, the ALJ did not identify what additional evidence Dr. Newell-Eggert was missing and how such evidence could undermine her opinions. Absent a specific explanation, the ALJ's decision to select Dr. Alley's opinions over Dr. Newell-Eggert's opinions was unreasonable, and therefore erroneous.

The ALJ did not err in rejecting Dr. Newell-Eggert's opinion that Plaintiff needed to periodically lie down. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ reasonably determined that Dr. Newell-Eggert's treatment records did not adequately support her opinion that Plaintiff would need to lie down throughout the day. *See* AR at 29.

The ALJ's final point, that Dr. Newell-Eggert's opinions were vocational rather than medical, is only partly accurate. The ALJ was correct in stating that Dr. Newell-Eggert did not have the expertise to make a vocational determination as to whether Plaintiff was capable of any work. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Nothing in the record showed that Dr. Newell-Eggert had access to (or expertise to evaluate) job numbers and functional requirements, so she could not reasonably opine

as to whether there were jobs available that Plaintiff could perform despite his limitations. But this was not a sufficient reason to reject Dr. Newell-Eggert's more specific opinions about Plaintiff's functional abilities, such as his lifting, walking, and standing capabilities.

In sum, the ALJ did not err in rejecting Dr. Newell-Eggert's opinions that Plaintiff would need to lie down at times during the day and could not perform any work, but erred in rejecting the remainder of Dr. Newell-Eggert's opinions.

**C.     The ALJ Harmfully Erred in Discounting Plaintiff's Wife's Testimony**

Plaintiff contends that the ALJ harmfully erred in discounting Plaintiff's wife's testimony. Pl. Op. Br. at 11–12. In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1053). The ALJ must "give reasons germane to each witness" before he can reject such lay witness evidence. *Molina*, 674 F.3d at 1111 (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

Plaintiff's wife testified at the hearing as to her observations of Plaintiff and the activities he took part in on a daily basis. *See* AR at 87–94. Plaintiff's wife testified that he could be up doing tasks for two to three hours, but then would need more than 15 minutes to rest. *See id.* at 88. Plaintiff's wife testified that Plaintiff could lift 10–20 pounds and could do so for "[m]aybe two hours." *Id.* at 89–90.

Plaintiff's wife also submitted a third-party adult function report. *See id.* at 244–51. She described Plaintiff's daily activities, and opined as to Plaintiff's functional limitations. *See id.*

The ALJ gave Plaintiff's wife's testimony "some weight." *Id.* at 30. The ALJ ostensibly accepted Plaintiff's wife's testimony regarding what Plaintiff did on a daily basis, but rejected her testimony that Plaintiff needed to take breaks in his activities. *See id.* The ALJ did not discuss Plaintiff's wife's testimony regarding Plaintiff's lifting capacity. *Id.* The ALJ rejected Plaintiff's wife's testimony regarding Plaintiff's need to take breaks because it was "inconsistent with the medical evidence which [sic] does not indicate his impairments require him to do so." *Id.*

The ALJ erred in rejecting Plaintiff's wife's testimony. An ALJ may not simply state that testimony is "inconsistent with the medical evidence" without pointing to any inconsistencies; it is not the reviewing court's job to comb the administrative record to find conflicts that support the ALJ's position. *See Burrell*, 775 F.3d at 1138; *Stout*, 454 F.3d at 1054 ("[T]he ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony."). Moreover, the Court cannot consider the ALJ's errors harmless based on the ALJ's rejection of Plaintiff's testimony because the ALJ partially erred in rejecting Plaintiff's testimony. *See supra* Part VII.A. The ALJ thus harmfully erred in rejecting Plaintiff's wife's testimony.

D. **The ALJ Harmfully Erred in Assessing Plaintiff's RFC**

Plaintiff contends that the ALJ harmfully erred in assessing Plaintiff's RFC. Pl. Op. Br. at 12–13. Plaintiff argues that the RFC does not include all limitations in

handling and fingering that are supported by the evidence. *See id.* Because the Court has found that the ALJ erred in assessing some of Plaintiff's testimony, Dr. Newell-Eggert's opinions, and Plaintiff's wife's testimony, the Court agrees that the ALJ erred in assessing Plaintiff's RFC. *See Lingenfelter*, 504 F.3d at 1040–41 (holding that ALJ's RFC assessment and step five determination were not supported by substantial evidence where the ALJ's RFC and hypotheticals to vocational expert failed to include all of the claimant's impairments).

**E.     Scope of Remand**

Plaintiff asks the Court to remand this matter for an award of benefits. Pl. Op. Br. at 13–14. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court]

reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. Although the first step of the remand-for-benefits framework has been met, the second has not. The ALJ reasonably rejected parts of Plaintiff's testimony, as well as parts of Dr. Newell-Eggert's opinions. The Court cannot reweigh the evidence, translate it into an RFC, or determine if there are jobs that exist that Plaintiff could do despite his functional limitations. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that the ALJ is responsible for translating the evidence into an RFC). Remand for further proceedings is necessary to resolve these issues. *See Leon*, 880 F.3d at 1047–48 (affirming the district court's remand for further proceedings rather than remand for an award of benefits where there were unresolved conflicts and ambiguities in the evidence).

On remand, the ALJ shall reassess Plaintiff's symptom testimony regarding his low back, leg, and neck pain; reassess Dr. Newell-Eggert's opinions other than her opinion that Plaintiff needs to lie down during the day (unless new evidence is received that justifies reconsidering this opinion); reassess Plaintiff's wife's testimony; reassess Plaintiff's RFC, and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

# VIII. ORDER

Therefore, it is hereby ORDERED that the Commissioner's final decision denying Plaintiff disability benefits is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 6th day of September, 2019.

_____
BENJAMIN H. SETTLE
United States District Judge